UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00861-GNS-CHL

ED BURKE                                                                    PLAINTIFF

v.

LAWRENCE & LAWRENCE, PLLC                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss and for Summary Judgment (DN 43) and Defendant's Motion to Hold Plaintiff's Motion for Partial Summary Judgment in Abeyance (DN 69). The motions are ripe for adjudication. For the reasons outlined below, Defendant's Motion to Dismiss and for Summary Judgment (DN 43) is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment (DN 67) and Defendant's Motion to Hold Plaintiff's Motion for Partial Summary Judgment in Abeyance (DN 69) are **DENIED AS MOOT**.

I.   **STATEMENT OF FACTS AND CLAIMS**

Plaintiff Edward Burke ("Burke") filed this action alleging that Defendant Lawrence & Lawrence, PLLC violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. (Compl. ¶ 1, DN 1). The alleged violation of the FDCPA arises from a prior action styled *First Capital Bank of Kentucky v. Primera, LLC, Jeff Hardin, and Paul Barker*, filed in Jefferson Circuit Court, Kentucky, Civil Action No. 11-CI-401831. (Compl. ¶ 2). Burke was a

third-party defendant in that action, and the state court entered an adverse judgment against him. (Compl. ¶ 2).

## II. DISCUSSION

### A. Defendant's Motion to Dismiss and for Summary Judgment (DN 43-44)

In ruling on a motion for summary judgment,[1] the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

---

[1] Defendant has styled its dispositive motion as a motion to dismiss but argued that it is entitled to relief under both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. (Def.'s Mot. Summ. J. 1, DN 43; Def.'s Mem. Supp. Mot. Summ. J. 8-9, DN 44). In Burke's response, he addressed the motion under both rules. (Pl.'s Resp. Def.'s Mot. Summ. J. 1, DN 65). When matters outside the pleadings—like affidavits and other documents—are presented in support of Fed. R. Civ. P. 12(b)(6) motion, the motion is treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Because both parties have attached numerous exhibits to the motion, response, and reply, the Court will construe Defendant's dispositive motion as a motion for summary judgment and will not analyze the motion to dismiss separately.

dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

In support of its motion, Defendant argues that the Court should dismiss Burke's claims, *inter alia*, because it is not a debt collector under the FDCPA, and any such claim would be barred by the *Rooker-Feldman* doctrine. (Def.'s Second Mem. Supp. Mot. Dismiss 11-18, 22-23, DN 44). These bases are addressed below.

### 1. Rooker-Feldman *Doctrine*

While not Defendant's principal argument, the Court will first address whether it has jurisdiction over Burke's FDCPA claim under the *Rooker-Feldman* doctrine.[2] Under this doctrine, federal district courts do not have jurisdiction to hear appeals of final decisions from state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, (2005). *See also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1982); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). The doctrine is considered to cover only a narrow set of cases in which a district court is called upon to review or void a state court's decision. *See Exxon Mobil Corp.*, 544 U.S. at 283. *Rooker-Feldman* typically precludes cases in which a "state-court loser" invites federal courts to review state court judgments. *See id.*

Since the Supreme Court's decision in *Exxon Mobile Corp.*, the Sixth Circuit "has tightened the scope of *Rooker-Feldman*." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007) (citing *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006)). Applying *Pittman*, a sister court explained:

---

[2] Burke filed this action and alleged that this Court has subject-matter jurisdiction based on, *inter alia*, federal question jurisdiction. (Compl. ¶ 15).

> The *Rooker-Feldman* doctrine does not prevent a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court, as long as the federal plaintiff presents an independent claim even if that claim denies a legal conclusion reached by the state court.

*Whittiker v. Deutsche Bank Nat'l Tr. Co.*, 605 F. Supp. 2d 914, 921 (N.D. Ohio 2009) (citing *Pittman*, 241 F. App'x at 287).

In determining whether the doctrine applies, this Court must consider whether Burke's FDCPA claim attacks the prior state court judgment or asserts an independent federal claim on which a federal court may exercise subject matter jurisdiction. *See McCormick v. Braverman*, 451 F.3d 382, 393-94 (6th Cir. 2006). As the Sixth Circuit has instructed:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim. . . . The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim.

*McCormick*, 451 F.3d at 393-94 (internal citation omitted).

Courts within this circuit have held that *Rooker-Feldman* does not prohibit a FDCPA claim relating to the underlying state court judgment. *See, e.g.*, *Wood v. Midland Funding, LLC*, 698 F. App'x 260, 263-64 (6th Cir. 2017); *Whittiker*, 605 F. Supp. 2d at 921-22; *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006). For example, in *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006), the losing party in state court litigation sued the debt collector in federal court alleging a violation of the FDCPA. *See id.* at 437. The federal plaintiff alleged that his injury arose from the filing of a false affidavit in the state action, and the Sixth Circuit affirmed the lower court's holding that the claim was not barred by *Rooker-Feldman*. *See id.* Thus, the *Rooker-Feldman* doctrine did not bar such claims

4

because the claims were independent of the state court judgment in that they did not allege that the state court judgment "in and of [itself] violate[d] the federal Constitution or federal law, unlike the plaintiffs in *Rooker* and in *Feldman*." *Braverman*, 451 F.3d at 392.

From the face of the Complaint, it appears that the *Rooker-Feldman* doctrine does not preclude this Court from hearing Burke's FDCPA claim. Like in *Todd*, Burke articulated allegations of wrongdoing by Defendant occurring prior to the entry of the judgment in the state-court action. (Compl. ¶¶ 65-96). In particular, Plaintiff asserts, *inter alia*, that Defendant sought damages not permitted by Kentucky law, made a request for a deficiency claim that was materially false and misleading, and requested an improper interest rate and costs that were not properly recoverable. (Pl.'s Resp. Def.'s Mot. Dismiss 19-33). As this Court has previously held, the doctrine does not bar a plaintiff from seeking redress for actions taken by a debt collector prior to the entry of a judgment. *See Harrington v. DH Capital Mgmt., Inc.*, No. 3:14CV-627-JHM, 2014 WL 5776203, at *3 (W.D. Ky. Nov. 5, 2014) ("The facts of the present case differ slightly from those found in *Todd.* Namely, Plaintiff seeks redress based on actions taken prior to the entry of a judgment. However, this is a distinction without a difference. In fact, another district court examined facts similar to the present case where the debt collection agency obtained a default judgment that included attorney's fees and interest at a prohibited rate." (citing *Wyles v. Excalibur I, LLC*, No. 05-2798JRTJJG, 2006 WL 2583200 (D. Minn. Sept. 7, 2006))).

Accordingly, the *Rooker-Feldman* doctrine does not apply as a bar to the exercise of jurisdiction in this case. The Court will deny Defendant's motion on this basis.

## 2. *FDCPA*

In seeking to dismiss this claim, Defendant contends, *inter alia*, that it is not a debt collector under the FDCPA because it does not regularly collect debts. (Def.'s Mot. Dismiss 1, DN 43). Because Defendant does not satisfy the definition of a debt collector, the Court will dismiss this action.[3]

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The statute is very broad, and was intended to remedy 'what it considered to be a widespread problem.'" *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (citing *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). The FDCPA "authorizes private lawsuits and weighty fines designed to deter wayward collection practices." *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1720 (2017).

Defendant contends that it is not subject to the FDCPA because it does not meet the definition of a debt collector. The FDCPA defines that term as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See*

---

[3] Burke's response does address his burden to prove whether Defendant regularly collects debts, or presented any argument or evidence to refute the Affidavit of Attorney Michael F. Lawrence (DN 44-19) tendered by Defendant as to this issue. Thus, his silence constitutes a waiver of any argument as to the dismissal of the FDCPA claim on the grounds that Defendant does not meet the statutory definition of a debt collector. *See Swann v. Time Warner Entm't Co.*, 126 F. Supp. 3d 973, 981-82 (S.D. Ohio 2015) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011); *Clark v. City of Dublin*, 178 F. App'x 522, 524025 (6th Cir. 2006); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24 (6th Cir. 2003)).

*also Henson*, 137 S. Ct. at 1721 (noting that the plain terms of the phrase "owed or due another" indicates that the relevant inquiry is whether the "third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself.").

In particular, Defendant, a professional limited liability company engaged in the practice of law, asserts that it does not satisfy this definition because it does not "regularly collect[] or attempt[] to collect" debts. As the Supreme Court has held, "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

In *Schroyer v. Frankel*, 197 F.3d 1170 (6th Cir. 1999), the Sixth Circuit considered, *inter alia*, whether a law firm constituted a debt collector under the FDCPA. *See id.* at 1176. After examining the FDCPA's legislative history, the court held that "a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice." *Id.* In making that showing, the court acknowledged that various factors have been considered by other courts, which include: (i) "the volume of the attorney's collection activities"; (ii) "the frequent use of a particular debt collection document or letter"; (iii) "whether there exists a steady relationship between the attorney and the collection agency or creditor he represented"; (iv) "what portion of the overall caseload debt collection cases constitute"; (v) "what percentage of revenues derive from debt collection activities"; and (vi) in situations where debt collection is only a minor part of law practice, whether "the defendant has an 'ongoing relationship' with a client whose activities substantially involve debt collection." *Id.* (citation omitted). Applying those factors in *Schroyer*, the Sixth Court found that the defendant did not regularly collect debts, noting:

7

> The district court found that only two percent of Smith & Smith's overall practices consisted of debt collection cases, and that the firm did not employ individuals full-time for the purpose of collecting debts. The district court further found that only 7.4%, 29 of 389 cases annually, of Frankel's overall practice consisted of debt collection cases, and that in the majority of his debt collection cases, he represented debtors—implying that Frankel was not competing with lay debt collectors. Moreover, the district court found that Frankel represented a number of business clients who were the source of his twenty-nine debt collection cases.
>
> Finally, the court observed that Plaintiffs failed to offer evidence showing that fees generated or collected by Smith & Smith or Frankel from debt collection activities constituted a great portion of overall revenues, and failed to offer proof that Smith & Smith or Frankel handled debt collection cases as part of an ongoing relationship with a major creditor or business client with substantial debts for collection. While these facts do support the inference that it was not unusual for Defendants to perform debt collection work, or that their debt collection work occurred in more than an isolated instance, we believe it does not support a claim that Defendants were "in the business" of debt collection, that they were in the "debt collection" industry, or that Smith & Smith was a "debt collection firm." Rather, the facts establish that Defendants' debt collection activities were incidental to, and not relied upon or anticipated in, their practice of law, and that therefore they should not be held liable as "debt collectors" under the FDCPA. Accordingly, we hold that the district court did not err in ruling in Defendants' favor and in dismissing Plaintiffs' FDCPA claims against Defendants.

*Schroyer*, 197 F.3d at 1176-77 (internal footnote omitted).

In the case *sub judice*, the Defendant law firm is not a debt collector. During the four-year period in which the related state-court action was pending, Defendant handled approximately 500 matters of which 30 to 35 involved representing creditors. (Lawrence Aff. ¶¶ 5-6, DN 44-19). Thus, in the period, Defendant averaged seven to eight matters annually, which represented six to seven percent of all legal matters handed by that firm. (Lawrence Aff. ¶ 6). The affidavit noted the following with regard to Defendant's collection-related matters:

> 7. Between 25 and 30 of these matters involved litigation on behalf of creditor clients.
> 8. These litigation clients consisted of two chiropractors; one used car dealership; approximately six landlords suing for unpaid rent and property damage; the defendants/third-party plaintiffs in the underlying litigation;

8

and one similar case in which the firm initially defended the client and brought claims only as counterclaims, cross-claims, or third-party claims.
9. All the collection matters involving litigation were related to ongoing representation of clients, with the exception of the one used car dealership and chiropractor clients. For example, the post-eviction actions arose from the evictions, and the underlying action against Plaintiff Burke arose from the firm's defense of commercial clients in a foreclosure and breach of contract action.
10. In approximately five non-litigation matters, the firm filed a mechanic's or broker's lien on behalf of a client.

(Lawrence Aff. ¶¶ 7-10). The law firm also handled municipal tax foreclosures and eviction proceedings. (Lawrence Aff. ¶ 11). The firm does not represent debt collection agencies or any other debt collector and for that four-year period less than one percent of Defendant's revenue was derived from collection matters. (Lawrence Aff. ¶¶ 12-13).

Based on these facts, Plaintiff cannot prove that Defendant regularly collects or attempts to collect debts to qualify as a debt collector under the FDCPA. *See McCandless v. Rice*, No. 06-528-C, 2008 WL 640904, at *2 (W.D. Ky. Mar. 4, 2008) (finding that a defendant was not a debt collector because 98% of her practice was domestic relations, "she [was] not part of the debt-collection industry", and there was no evidence that debt collection was a significant part of her practice). Since Defendant is not a debt collector as defined by the FDCPA, Plaintiff's claim fails as a matter of law. The Court will grant Defendant's motion.[4]

**B. Plaintiff's Motion for Partial Summary Judgment (DN 67)/Defendant's Motion to Hold Plaintiff's Motion for Partial Summary Judgment in Abeyance (DN 69)**

Burke has also moved for partial summary judgment on various bases. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 1-2, DN 67-1). Defendant has subsequently moved to hold Burke's

---

[4] Defendant has also argued that it is entitled to summary judgment on the bases of the defense of collateral estoppel and that its actions did not violate the FDCPA. (Def.'s Second Mem. Supp. Mot. Dismiss 1). Because the FDCPA does not apply, it is unnecessary to address these additional grounds for dismissal.

motion in abeyance until the resolution of Defendant's dispositive motion. (Def.'s Mot. Hold Pl.'s Mot. Partial Summ. J. in Abeyance 1-2, DN 69). Because the Court has determined that Defendant is entitled to judgment as a matter of law, the Court will deny the remaining motions as moot.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss and for Summary Judgment (DN 43) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

2. Plaintiff's Motion for Partial Summary Judgment (DN 67) and Defendant's Motion to Hold Plaintiff's Motion for Partial Summary Judgment in Abeyance (DN 69) are **DENIED AS MOOT**.

3. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
March 22, 2018

cc: counsel of record